

ENTERED
08/06/2019

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE: §
RONALD W DUTKA; fdba § CASE NO: 18-33893
INTERNATIONAL WORLDWIDE §
EQUIPMENT, *et al* §
    Debtors §
 § CHAPTER 7

## MEMORANDUM OPINION

A voluntary chapter 7 bankruptcy petition was filed in the names of Ronald and Hazel Dutka on July 12, 2018. On January 3, 2019, the Dutkas filed a motion to dismiss their bankruptcy case. The Dutkas argue that equity favors dismissing their bankruptcy case because:

(i) they did not consent to the filing of the petition;

(ii) their attorney, Gregory Wiley, filed the petition without their knowledge or authority;

(iii) they did not sign the petition before it was filed; and

(iv) Mr. Wiley failed to explain the possible repercussions of filing for bankruptcy, which exposed their family members to significant lability from preferential transfers the Chapter 7 Trustee has attempted to avoid.

For the reasons set forth below, the Dutkas' motion to dismiss is denied.

## Background

In August 2016, Mr. Dutka executed a promissory note in favor of Citizens State Bank for $49,386.32.[1] (ECF No. 25 at 8). Repayment of the promissory note was secured by the Dutkas' vehicles. (ECF No. 25 at 8). As the Dutkas incurred additional debt, they attempted to remedy their financial situation by selling their home in June 2017 and using the sale proceeds to repay their creditors. (ECF No. 55 at 1). Some of the creditors who received these sale proceeds

---

[1] When the chapter 7 bankruptcy petition was filed, the Dutkas owed $75,150.19 on the promissory note, including accrued interest. (ECF No. 25 at 8).

included the Dutkas' family members who had previously loaned them money. The Dutkas transferred approximately $100,000.00 to their daughters, mostly in repayment of loans. (June 18, 2019 Hearing at 2:47 p.m.). Although the sale of their home allowed the Dutkas to repay their family members, they failed to maintain their payment obligations on the promissory note. (ECF No. 47 at 8). In December 2017, Citizens State Bank filed a state court suit against Mr. Dutka for his alleged failure to repay the promissory note. (ECF No. 47 at 1, 6). Citizens State Bank filed a motion for summary judgment, which the state court set for hearing on July 16, 2018. (ECF No. 49 at 8).

On June 25, 2018, Mr. Dutka scheduled an initial meeting with Mr. Wiley to discuss possible remedies for his financial and legal problems, including filing bankruptcy to stay the Citizens State Bank lawsuit. (ECF No. 47 at 1). That same day, Mr. Wiley emailed Mr. Dutka a proprietary worksheet named "Information Packet Fillable," which Mr. Wiley used to gather client information in case the Dutkas decided to file bankruptcy. (June 18, 2019 Hearing at 3:25 p.m.). Mr. Dutka later returned the worksheet to Mr. Wiley on July 10, 2018. (June 18, 2019 Hearing at 2:06 p.m.). Mr. Dutka alleges that the worksheet he returned to Mr. Wiley was incomplete. (June 18, 2019 at 2:09 p.m.).

The core of this dispute centers on whether the Dutkas signed their bankruptcy petition before Mr. Wiley filed it. The parties portray dramatically different versions of events that occurred on July 11 and July 12, 2018, when the bankruptcy petition was allegedly signed. The Dutkas argue that they were so busy with family and leisure activities during the days in question that they did not have time to review or sign their bankruptcy petition. Conversely, the Trustee asserts that the Dutkas did review and sign the petition before it was filed.

Mr. Dutka initially claimed that he spent July 11, 2018 working in his home office and spending time with his family in Montgomery, Texas. (June 18, 2019 Hearing at 4:53 p.m.). As a result, the Dutkas argue that it was impossible for either of them to have met with Mr. Wiley at his office, that they could not have authorized the filing of the bankruptcy petition, and that they could not have received a copy of it from Mr. Wiley. (ECF No. 75 at 110).

However, the Trustee, relying on Mr. Wiley's testimony, alleges that Mr. Dutka met with Mr. Wiley at his office on July 11, 2018, where Mr. Dutka received a draft copy of the petition for the Dutkas to review overnight in preparation for their meeting with Mr. Wiley on July 12, 2018. (ECF No. 75 at 9, 14).

The Dutkas concede that they met with Mr. Wiley in his office on July 12, 2018 for approximately thirty minutes. (ECF No. 75 at 28). However, the Dutkas claim that they never signed a bankruptcy petition during this meeting. (ECF No. 47 at 1). They also allege that they did not know that Mr. Wiley was going to file their petition because they never saw the petition or authorized the filing. (ECF No. 75 at 114).

Conversely, the Trustee, relying on Mr. Wiley's testimony, alleges that the Dutkas signed their bankruptcy petition and authorized its filing at the meeting. (ECF No. 75 at 32). Two hours after the Dutkas left Mr. Wiley's office, Mr. Wiley electronically filed the chapter 7 bankruptcy petition with the Dutkas' electronic signatures. (ECF No. 75 at 35). Mr. Wiley emailed Mr. Dutka the same day to inform him that the bankruptcy petition had been filed. (June 18, 2019 Hearing at 2:00 p.m.).

On July 15, 2018, Mr. Dutka emailed Mr. Wiley to ask whether the July 16, 2018 summary judgment hearing in state court would be canceled. (June 18, 2019 Hearing at 2:20 p.m.). Mr. Wiley responded that he would call counsel for Citizens State Bank but also informed

Mr. Dutka that he needed to file a suggestion of bankruptcy himself since Mr. Wiley did not represent the Dutkas in state court. (ECF No. 49 at 8). The automatic stay halted the summary judgment hearing against the Dutkas. (ECF No. 49 at 8).

In September 2018, the Dutkas attended their creditors meeting. (ECF No. 75 at 38-39). The Dutkas alleged that after the meeting, they read their bankruptcy petition for the first time and noticed Mr. Wiley's purported mistakes. (ECF No. 75 at 118). Mr. Dutka testified at the March 21, 2019 hearing, that discovering the mistakes in the petition "was very upsetting." (ECF No. 75 at 118). Ms. Dutka stated that after discovering the mistakes, "we told [Mr. Wiley] we didn't want him [as our attorney]." (ECF No. 66 at 10). Subsequently, Mr. Wiley filed a motion to withdraw as counsel, which the Court granted. (ECF No. 34 at 1).

The Dutkas assert that had they would not have filed bankruptcy if they had known the Trustee would seek to avoid and recover the Dutkas' payments to their daughters. (ECF No. 55 at 1). The Dutkas filed a motion to dismiss their bankruptcy case, which alleges that their bankruptcy petition was filed without their "effective consent or knowledge." (ECF No. 55 at 1). The motion to dismiss also pleads ineffective counsel. (ECF No. 55 at 1). At a hearing held on January 31, 2019, the Court explained to the Dutkas that if they did not sign their petition prior to filing, the law allows for dismissal of the bankruptcy case. (ECF No. 66 at 12). However, the Court also advised the Dutkas of the high bar they faced to demonstrate these facts. (ECF No. 66 at 12-13).

During the January 31, 2019 hearing, the Court explained "assume for a minute that everything you're telling me is right and you got bad advice from your lawyer, but you still signed the petition. You're still in bankruptcy." (ECF No. 66 at 23). Ms. Dutka responded: "I didn't sign the petition." (ECF No. 66 at 23). Mr. Dutka responded: "I don't think the

bankruptcy should have ever been filed." (ECF No. 66 at 23). After the Court explained the importance of their signatures to creating a valid bankruptcy petition, as described in greater detail below, the Dutkas appear to have altered their factual allegations to conform to this legal argument. That is highly inappropriate. The law must be applied to accurate facts. Although the Dutkas adopted the argument that they did not sign a valid petition, the Dutkas frequently reverted to the idea that Mr. Wiley did not provide effective counsel. (ECF No. 66 at 23, 66; *see* ECF No. 75 at 7). The Court encouraged the Dutkas multiple times to obtain competent counsel to represent them in this matter, but the Dutkas elected to proceed pro se because they "[could not] afford an attorney." (ECF No. 66 at 22).

The evidentiary hearing on the Dutkas' motion to dismiss was conducted over three days. On March 21, 2019, Mr. Wiley testified regarding his representation and interaction with the Dutkas, including the alleged meetings with the Dutkas on July 11 and 12, 2018. He specifically testified that he obtained their signatures on the bankruptcy petition. (ECF No. 75 at 32). The Dutkas then called Ms. Rose Stzeleske as a witness to disprove Mr. Wiley's testimony about July 11, 2018. (ECF No. 75 at 44). Ms. Stzeleske testified that she spent July 11, 2018 with the Dutkas on their boat on the lake. (ECF No. 75 at 47). Mr. Dutka confirmed that he did not go to Mr. Wiley's office on July 11, 2018 and could not have read and signed the petition in the amount of time the Dutkas met with Mr. Wiley on July 12, 2018. (ECF No. 75 at 110). The hearing was resumed on June 18, 2019, when Mr. Dutka was cross examined regarding his prior statement. (June 18, 2019 Hearing at 1:45 p.m.).

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Analysis

The Dutkas' motion to dismiss argues that their petition was filed without their effective consent because they did not sign the petition before it was filed. (ECF No. 55 at 1). The Dutkas request that the Court exercise its equitable powers and dismiss their chapter 7 bankruptcy petition. (ECF No. 55 at 1).

The Court may grant a chapter 7 debtor's motion to voluntarily dismiss the case "only after notice and a hearing and only for cause." 11 U.S.C. § 707(a). Debtors do not have an absolute right to voluntarily dismiss a chapter 7 petition. *In re Cochener*, 360 B.R. 542, 577 (Bankr. S.D. Tex. 2007). In order to determine whether to grant a voluntary motion to dismiss, a court must weigh the prejudices and interests of both creditors and debtors. *In re Wilcox*, 539 B.R. 137, 147 (Bankr. S.D. Tex. 2015) (citing *Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.)*, 857 F.2d 1061, 1063 (5th Cir. 1988)). If the equities are balanced and dismissal would prejudice the creditors, then dismissal should be denied. *See In re Atlas Supply Corp.*, 857 F.2d at 1063. Because a court must balance competing interests, "the decision whether to grant a motion to dismiss a petition in bankruptcy lies within the discretion of the bankruptcy judge." *Id.*

*Southern District of Texas Local Bankruptcy Rules*

The Dutkas argue that their bankruptcy petition was invalid on filing because they did not provide their actual signatures to Mr. Wiley before he electronically filed their bankruptcy petition with their electronic signatures.

Federal Rule of Bankruptcy 5005(a)(2) authorizes electronic filing. This Rule is supplemented by Bankruptcy Local Rules 5005–1 and 1001–1, which implement electronic filing in the Southern District of Texas. The bankruptcy petition filed on July 12, 2018 complies with both the Federal Rules of Bankruptcy Procedure and the Southern District of Texas's Local Rules because it was signed with "/s/" next to both Hazel and Ronald Dutkas' names. The Administrative Procedures for Electric Filing require that the Electronic Filer tender to the Court a "Declaration for Electronic Filing," which Mr. Wiley filed on July 18, 2018 in compliance with the procedures. (Ex. 18).

The Procedures also contain a section named, "Retention of Documents with Third-Party Signatures," which provides that "documents which contain the original signature of any party other than the Electronic Filer" shall be retained and "upon request, such original document must be provided to the court of other parties for review." *In re Bradley*, 495 B.R. 747, 783 (Bankr. S.D. Tex. 2013). Failing to obtain a debtor's "wet" signature on a petition would violate the Administrative Procedures for CM/ECF and, in turn, the Southern District of Texas Bankruptcy Local Rules 1001-1(b) and 5005-1(b) would not be met. As a result, unless Mr. Wiley possessed the Dutkas' actual signatures at the time of filing, the electronically filed petition would likely be invalid, favoring dismissal of the petition. Although the Dutkas' legal argument bears weight, the evidentiary record presented at the various hearings revealed significant contradictions and

inconsistencies in the Dutkas' testimony, which negates their core argument—that they never authorized the filing of their bankruptcy petition.[2]

*Events of July 11, 2018*

The parties' versions of July 11, 2018 events diverge dramatically. The Dutkas assert they never saw their bankruptcy petition before it was filed, so they could not have authorized Mr. Wiley to file it. (ECF No. 75 at 109). The Trustee counters that Mr. Dutka was given a draft of the Dutkas' bankruptcy petition to review on July 11, 2018. (ECF No. 75 at 14).

The Dutkas' statements concerning what occurred on July 11, 2018 changed numerous times during the three hearings before this Court. At first, Mr. Dutka stated that he was in Montgomery, Texas "from morning till night on July 11" and as a result, could not have visited with Mr. Wiley in his office, reviewed the bankruptcy petition, nor authorized its filing. (ECF No. 75 at 110). The Dutkas called Ms. Rose Stzeleske as a witness to corroborate their story. (ECF No. 75 at 44). At the March 21, 2019 hearing, Ms. Stzeleske's testimony described a full day, during which the Dutkas spent the day boating on Lake Conroe, eating ice cream, and spending time with their grandchildren. (ECF No. 75 at 47-48). Mr. Dutka asked Ms. Stzeleske: "at any time during the day of the 11th did I leave?" (ECF No. 75 at 48). Ms. Stzeleske responded, "No, you were with us the whole time because you were driving the boat." (ECF No. 75 at 48). Mr. Dutka elicited this testimony with the inference that he could not have gone to Mr. Wiley's office on July 11 and therefore never received a copy of the bankruptcy petition.

However, subsequent cross examination from the Trustee revealed that the Dutkas' version of what occurred on July 11, 2018 was impossible. At the June 18, 2019 hearing, Mr. Dutka was presented with copies of his bank statement and a check from his employer, which

---

[2] Mr. Wiley presented "wet ink" copies of each of the documents, signed and dated by the Dutkas. The Dutkas alleged that the documents were back dated.

was dated July 11, 2018. (June 18, 2019 Hearing at 1:45 p.m.; Ex. 24; Ex. 25). The check—dated July 11, 2018—was also deposited on July 11, 2018. (Ex. 24; Ex. 25). At first, Mr. Dutka claimed that the check had been delivered to his home at Lake Conroe. (June 18, 2019 Hearing at 1:48 p.m.). However, when confronted with the fact that the check was also deposited on July 11, 2018, Mr. Dutka changed his testimony. (June 18, 2019 Hearing at 1:50 p.m.). He testified—directly contrary to his prior unequivocal testimony—that on the morning of July 11, 2018, he was in downtown Houston, a material fact which was omitted from both Mr. Dutka's prior statements and Ms. Stzeleske's prior testimony. (June 18, 2019 Hearing at 3:40 p.m.). Mr. Dutka further stated: "I did not stop at [Mr.Wiley's] office" because "I knew we had company and we had a lot of kids, I had office work to do . . . I just had a full day." (June 18, 2019 Hearing at 3:42 p.m.).

Lake Conroe is approximately 50 miles from downtown Houston. The Court does not believe that Mr. Dutka was confused, and does not believe that he did not recall the events of July 11.

The Dutkas later attempted to prove that they were boating all afternoon and could not have gone to Mr. Wiley's office by introducing a photograph into evidence, which they purported was time stamped for 2:08 p.m. (June 18, 2019 Hearing at 3:48 p.m.; Ex. 6). However, the photo was actually time stamped 7:28 p.m. (June 18, 2019 Hearing at 3:48 p.m.; Ex. 6).

The Court then questioned Mr. Dutka regarding his activities on July 11, 2018. (June 18, 2019 Hearing at 4:51 p.m.). In response, Mr. Dutka presented a third version of what occurred on July 11, 2018. Mr. Dutka admitted that he drove downtown to pick up the check at approximately 9:00 a.m., deposited the check at the Wood Forest Bank, then drove home. (June

18, 2019 Hearing at 4:52 p.m.). Once home, Mr. Dutka then claimed he and his wife took a credit counseling course and spent the rest of his day with his family and working in his office. (June 18, 2019 Hearing at 4:52 p.m.; June 18, 2019 Hearing at 1:59 p.m.). In the evening, Mr. Dutka then e-mailed the credit counseling certificates to Mr. Wiley and inquired about their appointment, which was set the following day. (June 18, 2019 Hearing at 4:54 p.m.).

Conversely, Mr. Wiley testified that Mr. Dutka arrived at his office on July 11, 2018, and that he provided Mr. Dutka with a draft copy of the petition for his review. (ECF No. 75 at 9). Mr. Wiley also informed Mr. Dutka that Ms. Dutka needed to be present the next day to sign the petition. (ECF No. 75 at 14).

Mr. Dutka's testimony greatly damaged his credibility with the Court. Mr. Dutka initially presented a timeline of July 11, 2019, which was so devoted to his family activities that he did not have a moment to spare to meet with Mr. Wiley. (ECF No. 75 at 110). However, Mr. Dutka was then confronted with incontrovertible evidence from the Trustee (the check and the deposit of the check). (June 18, 2019 Hearing at 1:45 p.m.). Mr. Dutka failed to provide any plausible explanation regarding the omission of these events from his initial portrayal of the events of July 11, 2018. Accordingly, Mr. Wiley's testimony represents the only credible version of what occurred on July 11, 2018 in the evidentiary record.

*Events of July 12, 2018*

The parties' views on the events of July 12, 2018 also differ significantly. The Dutkas argue they did not sign their petition on July 12, 2018 or authorize Mr. Wiley to file it. (ECF No. 47 at 1). The Trustee asserts that the Dutkas signed the petition before it was filed with the Court on July 12, 2018. (ECF No. 75 at 32).

The Dutkas' testimony contained numerous inconsistencies regarding when they signed their petition and other documents filed with the Court. Mr. Wiley testified that the Dutkas signed their bankruptcy petition on July 12, 2018. (ECF No. 75 at 78). The Dutkas continuously denied that they knowingly signed their bankruptcy petition on July 12, 2018. (ECF No. 47 at 1).

Mr. Dutka stated that he signed something on July 12, 2018 but did not know that he was signing a bankruptcy petition. (June 18, 2019 Hearing at 3:23 p.m.). He also stated that he signed "whatever [Mr. Wiley] put in front of us." (ECF No. 66 at 20). However, after the Trustee showed Mr. Dutka multiple initialed changes on the bankruptcy petition, Mr. Dutka admitted he and Ms. Dutka initialed changes at some time but was positive these changes were not made on July 12, 2018. (June 18, 2019 Hearing at 3:11 p.m.).

Ms. Dutka testified that she could not have signed anything on July 12, 2018 because she was occupied by her grandchildren and talking on her phone. (ECF No. 66 at 22). Mr. Dutka testified that both he and Ms. Dutka signed the petition signature pages on July 16, 2016. (June 18, 2019 Hearing at 11:59 a.m.). This is inconsistent with Mr. Dutka's previous testimony on when he signed the petition. Mr. Dutka also testified the Declaration for Electronic Filing of Bankruptcy Petition was signed in August along with other documents. (June 18, 2019 Hearing at 4:28 p.m.). However, this was impossible because the Declaration for Electronic Filing was filed on July 18, 2018 and bore the Dutkas' signatures in wet ink. (June 18, 2019 Hearing at 4:28 p.m.).

The record demonstrates that the Dutkas knew they were filing for bankruptcy and the benefits of filing their petition. On July 15, 2018, Mr. Dutka sent Mr. Wiley an email to confirm that the automatic stay would abate his pending summary judgment hearing in state court. (June

18, 2019 Hearing at 2:20 p.m.; Ex. 27). The Dutkas cannot argue that they did not know they had filed for bankruptcy, while simultaneously seeking and enjoying the benefits of the bankruptcy process by obtaining relief from the state court suit through the automatic stay.

The Dutkas' difficult burden was exacerbated by their decision to proceed pro se. The Court extended the Dutkas every procedural and evidentiary benefit within its discretion. However, the consistent misrepresentations the Dutkas presented the Court are incurable. The Court finds that the Dutkas signed their bankruptcy petition in their attorney's office on July 12, 2018. The Dutkas' bankruptcy petition was validly filed under the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules in the Southern District of Texas.

*Buyer's Remorse*

The Dutkas also argue that they would not have filed their bankruptcy petition, had they known that filing would expose their children to liability. (ECF No. 66 at 7). The Dutkas argued that Mr. Wiley provided ineffective counsel, so they did not know the possible repercussions of filing bankruptcy. (ECF No. 55 at 1).

"Courts are not impressed with complaints of attorney negligence, lack of representation, or errors in judgment by debtors when considering motions for voluntarily [sic] dismissal." *In re Hopper*, 404 B.R. 302, 308 (Bankr. N.D. Ill. 2009); *see also In re Cowin*, 2014 WL 1168714, at *19 (Bankr. S.D. Tex. March 21, 2014) ("[T]he Debtor is bound by the misrepresentations and inaccurate disclosures of his chosen attorney"). Courts have repeatedly denied voluntary motions to dismiss voluntary bankruptcy petitions where a debtor argues she received ineffective counsel and regrets filing. *See In re Martin*, 30 B.R. 24, 25 (Bankr. E.D.N.C. 1983) (denying motion to dismiss despite debtor's assertion that counsel failed to explain the effects of filing a bankruptcy petition); *In re Hickman*, 384 B.R. 832, 834 (B.A.P. 9th Cir. 2008) (affirming

bankruptcy court's decision to deny motion to dismiss because chapter 7 debtor's "buyer's remorse" over filing was not sufficient cause to warrant dismissal). Accordingly, even if the Dutkas did not receive adequate legal advice regarding their bankruptcy petition, that alone is not grounds for dismissal.

The Dutkas repeatedly argued that Mr. Wiley provided ineffective counsel by noting mistakes in the petition and discrepancies between the petition containing electronic signatures and the petition with wet signatures. (ECF No. 75 at 23; *see* ECF No. 75 at 57). At the March 21, 2018 hearing, Mr. Dutka asked and answered:

> Q: Did Mr. Wiley ask you, do you own a dog?
>
> A: No, sir, he never did.
>
> Q: Did he answer on the petition that we owned a dog?
>
> A: Yes, he did.

(ECF No. 75 at 131). Mr. Dutka testified: "One of the things I'm trying to point out is the errors or mistakes that was made by our attorney which led us to where we are today." (ECF No. 75 at 23). Throughout the hearings before the Court, the Dutkas continued to express their anger towards Mr. Wiley despite the Court informing them it was not relevant to their motion. (ECF No. 75 at 7).

Much of the Dutkas' motion is based on the argument that ineffective counsel would justify dismissal of their petition. *See In re Atlas Supply Corp.*, 857 F.2d at 1063. The Court does not conclude that the Dutkas received inadequate representation from Mr. Wiley.

The Dutkas' testimony was continually discredited throughout each of the hearings. The Dutkas' continually changing stories and portrayal of their bankruptcy case changed so many

times that their testimony was rendered meaningless. Based on the evidentiary record, the Dutkas failed to carry their burden to demonstrate cause to dismiss the bankruptcy petition.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **August 6, 2019.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE